## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAVID PLYLER,

    Petitioner,

    v.

ERIC ROKOSKY,

    Respondent.

Civil Action No.: BAH-25-384

## MEMORANDUM OPINION

Petitioner David Plyler, a federal inmate, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking a nunc pro tunc review or retroactive designation regarding his sentence, an order to run his state and federal sentences concurrently, and credit toward his federal sentence beginning on February 20, 2020. ECF 1, at 6-7. Respondent Warden Eric Rokosky of the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland") filed a Motion to Dismiss the Petition.[1] ECF 10. Plyler opposes the Motion. ECF 12, 13. Having reviewed the Petition, Motion, and Reply, the Court finds that no hearing is necessary. Rules 1(b), 8, *Rules Governing Section 2254 Cases in the United States District Courts*; D. Md. Local R. 105.6 (2025). For the reasons set forth below, the Court will GRANT Respondent's Motion and dismiss the petition.

### I.    BACKGROUND

#### a.  Respondent's Answer

Respondent first argues that Plyler is not entitled to seek habeas relief because he has failed

---

[1] Warden Bayless is the current Warden of FCI-Cumberland and therefore the Clerk shall substitute her as the proper Respondent.

to exhaust his administrative remedies.  ECF 10, at 5.  Respondent reports that Plyler has filed three administrative remedies during his incarceration. ECF 10-3, ¶ 11. On February 5, 2024, FCI-Cumberland received Administrative Remedy #1188998-F1 concerning "jail credits."  *Id.* ¶ 11(a). "[T]he remedy was closed for informational purposes." *Id.*   On March 22, 2024, the Mid-Atlantic Regional Office received Administrative Remedy # 11889989-R1 as an appeal of the decision of the initial remedy, but it was rejected on March 25, 2024 as being untimely.  *Id.* ¶ 11(b).  On April 23, 2024, the Central Office received Administrative Remedy #1188998-A1 concerning jail credits. *Id.* ¶ 11(c).  On May 6, 2024, the remedy was rejected for the reasons found at both the prison level and Mid-Atlantic Regional Office. *Id.*

Respondent next argues that, even if the Court were to reach the merits of Plyler's claim, it fails because he has received all credit he is due. ECF 10, at 8. Specifically, the record reflects that Plyler was arrested and charged in Gaston County, North Carolina with: (1) Expired Registration Card/Tag; (2) Improper Passing on Right (Docket Number 20CR703519); (3) Reckless Driving – Wanton Disregard; (4) Failure to Stop-Steady Ready Light (Docket Number 20CR703520) and Speeding (Docket Number 20CR703521); (5) Fictitious/Altered Title/Registration Card/Tag (Docket Number 20CR703524); (6) Speeding; (7) Unsafe Movement (Docket Number 20CR703525); (8) Flee/Elude Arrest with Motor Vehicle; (9) Common Law Robbery; (10) Assault with Deadly Weapon on Government Official (Docket Number 20CRS050777); and (11) Driving While Impaired (Docket Number 20CR000169). ECF 10-1, ¶ 6. Charges 4, 8, 9, and 10 relate to Petitioner's federal offense. *Id.*

On February 27, 2020, Plyler was charged in Gaston County, North Carolina for Common Law Robbery (Case Numbers 20CRS051997 and 20CRS051998), attempted Common Law

2

Robbery (Case Number 20CRS051999), and Robbery with a Dangerous Weapon (Case No. 20CRS052000). ECF 10-1, ¶ 7.

On November 23, 2020, while Plyler was in the custody of North Carolina, a federal petition for writ of habeas corpus ad prosequendum was filed in the United States District Court for the Western District of North Carolina, Case Number 3:20-cr-389. ECF 10-1, ¶ 8. On that same date, all charges were dropped in Gaston County, Case Numbers 20CRS051997, 20CRS051998, 20CRS051999, and 20CRS052000. *Id.* On December 15, 2020, Plyler was remanded to the custody of the United States Marshals Service ("USMS") pursuant to the writ of habeas corpus ad prosequendum. *Id.* ¶ 9. Subsequently, on March 17, 2021, Gaston County, North Carolina charges 1–7 and charge 11 were dismissed. *Id.* ¶ 10.

On August 17, 2022, Plyler was sentenced in the United States District Court for the Western District of North Carolina in Case Number 3:20-cr-389, to a 63-month term of imprisonment for four counts of Bank Robbery, in violation of 18 U.S.C. § 2133(a). *Id.* ¶ 11. The Court was silent as to the federal sentence's relationship to any state sentence. *Id.*

On August 26, 2022, Plyler was returned to the custody of Gaston County, North Carolina to complete his state sentence. *Id.* ¶ 12. A federal detainer was lodged so that Plyler would be returned to federal custody upon completion of his state sentence.. *Id.*

On August 18, 2023, Plyler pled guilty to Gaston County, North Carolina charges 8, 9, and 10 and was sentenced to a 17–30 month term of imprisonment in the North Carolina Department of Adult Corrections;  918 days of jail credits were applied to his state sentence. *Id.*, ¶ 13. This jail credit resulted in a release date of August 22, 2022, and therefore, he was to be immediately released from state custody. *Id.* He nonetheless remained in state custody for nearly a year before, on August 21, 2023, being taken into the custody of the USMS. *Id.* On October 30, 2023, he was

3

designated to FCI-Cumberland. *Id.* ¶¶ 14, 15. Plyler's federal sentence was computed and audited, commencing on August 21, 2023, the date he came into the exclusive custody of the Federal Bureau of Prisons ("BOP"). *Id.* ¶ 16. He received credit toward his federal sentence for time spent in custody from August 23, 2022 to August 20, 2023, credit he had not received towards his state sentence. *Id.*

Plyer sought adjustment of that calculation to give him credit against his federal sentence for all time spent in custody since the date of his arrest in February of 2020. ECF 1, at 2. In response to Plyler's request, on May 9, 2024, Plyler was advised that a nunc pro tunc, or retroactive designation, review would be completed. ECF 10-1, ¶ 17. Such review includes contacting the sentencing court and completing a five factor review pursuant to 18 U.S.C. § 3621(b). *Id.*

On May 16, 2024, the BOP contacted the United States District Court for the Western District of North Carolina seeking the sentencing court's "guidance on as to how [Petitioner's] federal sentence should run with respect to a sentence he has served with the State of North Carolina." ECF 13-1, at 1. The sentencing court did not respond. ECF 10-1, ¶ 18

On August 20, 2024, the 18 U.S.C. § 3621(b) review was completed, and the following day Plyler was advised that he was not entitled to a nunc pro tunc adjustment because of his offense, prior criminal history, and lack of response from the sentencing court. *Id.* ¶¶ 19, 20. Plyler's projected First Step Act ("FSA") release date is July 18, 2026. *Id.* ¶ 21.

## II.   **ANALYSIS**

It is the responsibility of the United States Attorney General, the Department of Justice, and the BOP to compute sentences of prisoners committed to the custody of the United States or the District of Columbia, and to apply jail credit where due. 18 U.S.C. § 3624; *see Leavis v. White*, 898 F.2d 154 (6th Cir. 1990) (citing *United States v. Norman*, 767 F.2d 455, 457 (8th Cir. 1985));

4

*United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir. 1979). After a federal district court sentences a federal offender, the Attorney General, through the BOP, is responsible for administering the offender's sentence. 18 U.S.C. § 3621(a); *United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also United States v. Stroud*, 584 Fed. Appx. 159, 160 (4th Cir. 2014) (holding that the Attorney General, through BOP, is responsible for computing sentencing credit for time in detention prior to sentencing).

Habeas corpus relief is available when a prisoner is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Challenges to the execution of a federal sentence are properly brought under 28 U.S.C. § 2241. *See Setser v. United States*, 566 U.S. 231, 244 (2012). In the event a prisoner disputes the computation of his sentence or the application of credits, he is permitted to seek a remedy for the grievance through the administrative remedy process in place in the Bureau of Prisons facilities. *See* 28 C.F.R. 542.10 *et seq.*; *see also United States v. Mitchell*, 845 F.2d 951, 952 (11th Cir. 1988) ("[A] federal district court does not have jurisdiction to entertain a federal prisoner's petition for jail time credit until the prisoner has exhausted his administrative remedies with the Attorney General under 18 U.S.C. § 3568.").

The Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel in Washington, D.C., using the appropriate forms. The inmate must file this final appeal within

30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

Respondent contends that Plyler did not exhaust his administrative remedies because his regional and Central Office level appeals were dismissed as untimely. ECF 10, at 7. Plyler explains that his appeals were delayed because due to "a combination of lack of access to staff members due to facility[ies] lockdowns and absen[ce] of staff members, mainly due to Covid 19." ECF 13. On this record, the Court cannot say that Plyler's failure to timely exhaust his administrative remedies was attributable to Plyler's conduct. As such, the Court rejects Respondent's exhaustion requirement and turns to the merits of Plyler's claim.

Under 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." If the sentencing judge does not direct that a term of confinement shall be served concurrently with another sentence, the imposed sentence is run consecutive to any other term of imprisonment. 18 U.S.C. § 3584 (providing that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently"). Under 18 U.S.C. § 3585(b), a defendant is not entitled to credit toward the service of a term of imprisonment if the period in question has been credited against another sentence. *See McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (holding that the intent of 18 U.S.C. § 3585(b) is to prevent double credit incurred before commencement of sentence).

A federal sentence does not begin until the Attorney General receives the defendant in custody for service of that sentence. 18 U.S.C. § 3585(a). Previous periods of custody are credited in accordance with 18 U.S.C. § 3585(b):

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed that has not been credited against another sentence.

The statute establishes that a defendant is not entitled to "double credit" toward a state sentence and a federal sentence before imposition of the federal sentence at issue. *Wilson,* 503 U.S. at 337.

The court also considers which sovereign—state or federal—has primary jurisdiction over the defendant. When a defendant has both state and federal charges, the sovereign to first arrest the defendant has primary jurisdiction over the defendant, and retains that status until it is relinquished. *Thomas v. Whalen*, 962 F.2d 358, 361 (4th Cir. 1992); *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *Dickens v. Stewart*, Civ. No. DKC-13-0795, 2014 WL 858977, at *2 (D. Md. Mar. 4, 2014) (citing *United States v. Evans,* 159 F.3d 908, 912 (4th Cir. 1998)). "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence." *Cole*, 416 F.3d at 897.

When "an inmate has sentences imposed by federal and state authorities, the sovereign that arrested him first acquires and maintains primary jurisdiction over him until the sentence imposed by that sovereign has been satisfied." *Dickens*, 2014 WL 858977, at *2 (citing *Evans,* 159 F.3d at 912). When "a state maintains primary jurisdiction over a defendant, federal custody under a federal criminal sentence 'commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.'" *Id.* (quoting *Evans,* 159 F.3d at 912). This is

7

because "[a] federal sentence does not commence until the Attorney General receives the defendant into [his] 'custody' for service of that sentence," unless "the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." *Evans*, 159 F.3d at 911–12 (citing 18 U.S.C. § 3585(a)). To relinquish or waive primary jurisdiction, a state may "deliver [the prisoner] into federal custody for the purpose of beginning his federal sentence." *Trowell v. Beeler*, 135 F.App'x 590, 594 (4th Cir. 2005). Primary jurisdiction is not relinquished however, when an inmate is borrowed pursuant to a writ of habeas corpus ad prosequendum. *Till v. Warden, FCI Cumberland*, Civ. No. GJH-20-2652, 2021 WL 3633963, at *4 (D. Md. Aug. 17, 2021) (citing *Evans*, 159 F.3d at 912). Further, a federal judge may order a federal sentence to run concurrently or consecutively to a previously imposed state sentence. *See* 18 U.S.C. § 3584. Relevant here, however, 18 U.S.C. § 3584 has been interpreted to *permit*, but not *require*, a federal judge to order a federal sentence to run concurrently or consecutively to an anticipated, but not yet imposed, sentence, whether federal or state. *Setser*, 566 U.S. at 236.

The federal sentencing judge did not order Plyler's sentence to run either concurrently or consecutively to the state sentence that would later be imposed on Plyer. 18 U.S.C. § 3584 (a) provides in part: "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Thus, when a federal sentencing judge does not indicate whether a federal sentence is to be concurrent or consecutive to a state sentence, it is deemed to be consecutive. *Dixon v. Warden, Fed. Corr. Inst. - Cumberland*, Civ. No. DKC-22-3286, 2023 WL 4490368, at *5 (D. Md. July 12, 2023).

When, however, a state judge later sentences a defendant and orders the state sentence to run concurrent to the federal sentence, the matter becomes more complicated and may turn on whose custody the prisoner is in. If the defendant is in primary state custody, unless the state.

8

relinquishes custody to the federal authorities so that the prisoner begins his federal sentence, there is no force to the state judge's order that a state sentence be served concurrently with a federal one. *Campbell v. United States*, 762 F. App'x 879, 881 (11th Cir. 2019) ("We also reject Campbell's argument that the state court's judgment mandates that Campbell's state sentence run concurrent or coterminous with his federal sentence for violating his supervised release. We have said -- and the state court judge explained during Campbell's sentencing proceedings -- that 'a federal court is authorized to impose a federal sentence consecutive to a state sentence, although the state court explicitly made its sentence concurrent with the federal sentence.'") (quoting *Finch v. Vaughn*, 67 F.3d 909, 915 (11th Cir. 1995)); *Suttle v. Fox*, No. CIV-13-1099-HE, 2013 WL 6493601, at *6 (W.D. Okla. Dec. 10, 2013) ("Petitioner does allege that the judgment of conviction in his state case contains language that his state sentence should run concurrently to his federal sentence; however, the state court's subsequent decision to make its sentence concurrent with Petitioner's federal sentence does not change the statutory rule that a federal sentence is consecutive unless the federal court judgment affirmatively states otherwise."); *Fortney v. Yancey*, No. CIV.A. 2:05-CV-2168R, 2007 WL 1202766, at *5 n.4 (D.S.C. Apr. 20, 2007) ("Of course, even though the sentence imposed by the state of Florida was a concurrent sentence, that alone has no impact whatsoever on the federal judge's ability to sentence a defendant to consecutive time."). Rather, the BOP has a mechanism by which the inmate may, after completing the state sentence and coming onto the custody of the BOP, request retroactive designation of the state facility for service of the federal sentence, thus giving effect to the concurrent sentence order from the state court. *See* BOP Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence (Jan. 16, 2003) (available at https://www.bop.gov/policy/progstat/5160_005.pdf) ("Program Statement

5160.05").[2]

*Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990), held that the BOP must consider an inmate's request for concurrent service of the state and federal sentences. However, there is no obligation in Program Statement 5160.05 requiring the BOP "to grant the request by designating a state institution retroactively as the place to serve the federal sentence." Program Statement 5160.05, at 6. In making the determination as to whether concurrent service may be appropriate, a letter will be sent to the federal sentencing court "inquiring whether the court has any objections." *Id.* If, after 60 days, a response is not received from the sentencing court, a decision will be made regarding concurrency. *Id.*

Here, Plyler was in state custody from February 20, 2020, the date he was arrested in Gaston County, North Carolina, to August 21, 2023, the date he was placed in primary federal custody despite the apparent fact that he did not immediately leave state confinement. ECF 10-1, ¶¶ 6, 14. On December 15, 2022, Plyler was borrowed from state custody on a writ of habeas corpus ad prosequendum to address his federal case and remained in federal custody on the writ until August 26, 2022. *See id.*, ¶¶ 9, 12. As previously noted, however, borrowing a prisoner pursuant to a writ of habeas corpus ad prosequendum does not relinquish primary jurisdiction over him. Plyler did not come into primary federal custody until August 21, 2023, *id.*, ¶ 14, thus his federal sentence could not commence earlier than that date without explicit authorization from the federal judge who sentenced him.

In this situation, the BOP has the authority to decide whether to credit the time in state

---

[2] This Program Statement provides that "[o]ccasionally, an inmate may request a nunc pro tunc (i.e., occurring now as though it had occurred in the past) designation. As a result of the decision in *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990), the Bureau considers an inmate's request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence as a request for a nunc pro tunc designation." Program Statement 5160.05, at 5.

custody against the federal sentence. *See* Program Statement 5160.05. The record here reflects that the BOP *did* consider the issue but ultimately determined that Plyler was not entitled to have his state and federal sentences run concurrently. ECF 12-3, at 16; ECF 10-2, at 43. "The BOP considered [the] request, applied the facts presented to factors enumerated in 18 U.S.C. § 3621(b), and contacted the sentencing court for its position." *Sanchez v. Coakley*, Civ. No. CCB-10-1585, 2011 WL 334692, at *5 (D. Md. Jan. 28, 2011), aff'd, 445 F. App'x 703 (4th Cir. 2011)). "The BOP has done all that is required and did not violate [Petitioner's] right to due process; there is no basis for habeas relief." *Id.*

Finally, 18 U.S.C. § 3585(b) expressly limits prior custody credit to situations where the inmate serves time in official detention following the commission of the federal offense and prior to commencement of the federal sentence for that offense, where that time has **not** been applied against any other sentences. (emphasis added). The record reflects that Plyer received 918 days of jail credit toward his state sentence. ECF 10-1, ¶ 13; ECF 12-3, at 10. Because Plyler received credit toward his state sentence, that time cannot be applied to his federal sentence. As noted, Plyler did receive credit toward his federal sentence from August 23, 2022, the day after his state jail credit effectuated his release from state custody to August 20, 2023, the day before he was taken into exclusive federal custody. ECF 10-1, ¶ 16; ECF 12-3, at 4. Plyer was entitled to the credit of that time because it has not been applied to his state sentence.

## III.    **CONCLUSION**

In sum. Plyler has received all the credit he was entitled to and his petition is dismissed. A separate Order follows.

| | |
|---|---|
|   January 21, 2026   |      /s/      |
| Date | Brendan A. Hurson |
| | United States District Judge |

11